UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

KOMATSU FINANCIAL
LIMITED PARTNERSHIP,

      Plaintiff,

v.                                                          CIVIL ACTION NO.  5:18-cv-01336

KIRBY LAND COMPANY, INC.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Interested Parties Greenbrier Medical Institute, LLC ("GMI") and Greenbrier Hotel Corporation's ("GHC") Objections to Magistrate Judge's Order Granting Motion to Compel [ECF 211], filed October 11, 2023. On October 20, 2023, Plaintiff Komatsu Financial Limited Partnership ("Komatsu") responded in opposition [ECF 216], to which GMI and GHC replied [ECF 218] on October 26, 2023.

I.

On September 16, 2019, the Court entered judgment in favor of Komatsu and against Defendant Kirby Land Company, Inc. ("Kirby"), in the principal amount of $9,301,029.80, with post-judgment interest, in addition to a late fee and continuing late fees. [ECF Nos. 40, 49]. On September 16, 2020, Komatsu applied for a writ of suggestion against Southern Coal Corporation ("Southern"), asserting Southern was liable for the judgment given its debts to Kirby. [ECF 98]. Shortly thereafter, the writ of suggestion was issued by the Clerk. [ECF 100]. On

December 13, 2021, Komatsu filed a Motion for Order of Payment by Southern to Komatsu of $9,017,009.15 Pursuant to Suggestion [ECF 110]. Southern opposes the Motion, contending its debt owed to Kirby is "conditional," subject to its ability to pay and is thus not garnishable under West Virginia law. Southern further contends it does not possess the funds necessary to pay Kirby.

On July 11, 2022, after holding a hearing on Komatsu's Motion, the Court denied the same without prejudice and ordered the parties to engage in discovery on the limited issues of whether Southern's debt to Kirby is contingent or fixed, and whether Southern possesses the ability to pay.[1] [ECF 137]. During discovery, Komatsu subpoenaed fourteen of Southern's related entities, including GMI and GHC, seeking, *inter alia*, business records such as balance sheets, income statements, lists of account receivables, and copies of deeds, leases, and assignments for all interests in real property transferred since January 1, 2019. GMI and GHC resisted the subpoenas, contending neither entity owes money to Southern.

On May 1, 2023, Komatsu filed a Motion to Compel GMI and GHC to Comply With Subpoena [ECF 184], asserting GMI and GHC owe $16,000,000 to Southern for an earth-moving project for the construction of a professional football training facility in Greenbrier County known as the "Greenbrier Project." Komatsu based its Motion to Compel, in part, on the deposition testimony of Southern's Executive Vice President Steve Ball. Mr. Ball testified Southern fronted Kentucky Fuel Corporation ("Kentucky Fuel"), another James C. Justice owned entity, the $16,000,000 for the Greenbrier Project, which Kentucky Fuel ultimately performed for GMI, not GHC. Komatsu's Motion to Compel was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for disposition.

---

[1] On April 23, 2023, discovery concluded. Komatsu has since renewed its Motion for Order of Payment By Southern, which remains pending.

During the pendency of the Motion to Compel, however, GMI agreed to comply with the subpoena and produced responsive documents. GMI also produced a witness, Terry Miller former CFO of GHC, for deposition regarding the Greenbrier Project. During Mr. Miller's deposition, he acknowledged GHC, rather than GMI, owned the land upon which the Greenbrier Project was conducted for the first three years of the project. GHC did not deed the property to GMI until the final year of the project. Inasmuch as the Greenbrier Project was initiated and conducted for most of its duration on land owned by GHC, Komatsu persisted in its Motion to Compel against GHC despite GMI's subpoena compliance.

On September 27, 2023, after conducting a hearing on the matter, Magistrate Judge Aboulhosn granted Komatsu's Motion to Compel against GHC. During the hearing, GHC apparently contended Komatsu had failed to demonstrate sufficient reasons or evidence to pierce the corporate veil against GHC in accordance with the Supreme Court of Appeals of West Virginia's decision in *Dailey v. Ayers Land Development, LLC*, 241 W. Va. 404, 825 S.E.2d 351 (2019). In his Order, Magistrate Judge Aboulhosn recognized Syl. Pt. 6 of *Dailey*, which provides as follows:

> "[T]o 'pierce the corporate veil' in order to hold the shareholder(s) actively participating in the operation of the business personally liable . . . , there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation along (a fairness requirement).' Syllabus point 3, in part, *Laya v. Erin Homes, Inc.*, 177 W. Va. 343, 352 S.E.2d 93 (1986)." Syl. Pt. 6, *Kubican v. The Tavern, LLC*, 232 W.Va. 268, 752 S.E.2d 299 (2013).

Nonetheless, Magistrate Judge Aboulhosn found GHC's reliance on *Dailey* misplaced inasmuch as "Komatsu is not pursing its judgment against an individual owner or shareholder, but a *corporation*, and the *corporations* subject to Komatsu's subpoenas all appear to be operated under

3

the same group of people or entities." [ECF 209 at 3 (emphasis in original)]. Simply stated, Magistrate Judge Aboulhson concluded "not only ha[d] [Komatsu demonstrated] a unity of interest, but there is also a lack of formality of corporate structure here that would result in unfairness to Komatsu if it were not permitted to obtain responsive documents to its subpoena." [*Id.*]. Magistrate Judge Aboulhosn further concluded as follows:

> Even ignoring the formalities of separating or identifying the separate corporate entities (which [the Magistrate Judge] is not convinced GHC is separate and apart from GMI and the other Justice-owned corporations that complied with Komatsu's subpoenas), the fact remains that GHC owned the real property during most of the Greenbrier Project's construction, giving the appearance of commingling assets with GMI. At bottom, there is a strong presumption that GHC owes money to Kentucky [Fuel] as gleaned from the documents obtained by Komatsu.

[*Id.*]. Magistrate Judge Aboulhosn thus determined Komatsu was "entitled to explore this potential source of monies in order to collect on its judgment awarded in this case." [*Id.*]. GHC and GMI timely objected to Magistrate Judge Aboulhosn's Order.

## II.

*Federal Rule of Civil Procedure* 72(a) provides that when a magistrate judge adjudicates a non-dispositive pretrial matter, a party may object to that ruling within fourteen (14) days after being served with a copy of the decision. If a timely objection is made, a district court "may modify or set aside any portion of a magistrate judge's non-dispositive ruling 'where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'" *Berman v. Cong. Towers Ltd. P'ship-Section I*, 325 F. Supp. 2d 590, 592 (D. Md. 2004) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a). "The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 479 (D. Md. 2014) (quoting *MMI Prods. v. Long*, 231 F.R.D. 215, 218 (D. Md. 2005)).

4

A court's "finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is nevertheless left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365 (1948); *see also Harman v. Levin*, 722 F.2d 1150, 1152 (4th Cir. 1985); *Marks v. Global Mortg. Grp., Inc.*, 218 F.R.D. 492, 495 (S.D.W. Va. 2003). "The 'contrary to law' standard ordinarily suggests a plenary review of legal determinations, but many courts have noted that decisions of a magistrate judge concerning discovery disputes . . . should be afforded 'great deference.'" *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. 2010); *see also Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 438 (D. Md. 2005) (stating "substantial deference [is often given] to a magistrate judge in considering" a ruling on a non-dispositive motion). "In light of the discretion given to a magistrate judge in the resolution of non[-]dispositive discovery disputes, the court should only overrule a magistrate judge's determination if this discretion is abused." *Blankenship v. Fox News, LLC*, 2:19-cv-00236, 2021 WL 2328004, at *3 (S.D.W. Va. June 8, 2021) (citing *Patrick v. PHH Mortg., Corp.*, 298 F.R.D. 333, 336 (N.D.W. Va. 2014)).

**III.**

GMI and GMC contend the Magistrate Judge erred in granting Komatsu's Motion to Compel "by disregarding the corporate form twice: first by disregarding Kentucky Fuel's role and treating the debt as being owed directly from GMI to Southern, and second by treating GMI's debts as being owed by GHC." [ECF 211 at 4]. Specifically, GMI and GMC assert "the Magistrate Judge allowed Komatsu to pierce the corporate veil between Kentucky Fuel and GMI, as well as the corporate veil between GMI and GHC, without even submitting argument on, let alone proving,

the multifarious factors[2] established by the West Virginia Supreme Court of Appeals," outlined in *Dailey*, 241 W. Va. at 413-14, 825 S.E.2d at 360-61. [*Id.* at 7]. Instead, they contend the Magistrate Judge relied on the single fact that GHC owned the property underlying the Greenbrier Project in granting Komatsu's Motion and disregarded Mr. Miller's testimony that "the Greenbrier Project was always a GMI project and the intent was always to convey the property to GMI – which was in fact done before the project was completed." [*Id.*]. They maintain that even assuming some lack of formality can be found by GHC's delay in deeding the property to GMI, the same, standing alone, fails to meet the heavy burden necessary to pierce the corporate veil. [*Id.*]. GMI and GHC

---

[2] These factors include: "(1) commingling of funds and other assets of the corporation with those of the individual shareholders; (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal usus of the corporation's shareholder); (3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors; (4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation; (5) failure to maintain corporate minutes or adequate corporate records; (6) identical equitable ownership in two entities; (7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties); (8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking; (9) absence of separately held corporate assets; (10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation; (11) sole ownership of all the stock by one individual or members of a single family; (12) use of the same office or business location by the corporation and its individual shareholder(s); (13) employment of the same employees or attorney by the corporation and its shareholder(s); (14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security); (15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities; (16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity; (17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another; (18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions; [and] (19) the formation and use of the corporation to assume the existing liabilities of another person or entity." *Dailey*, 241 W. Va. at 413-14, 825 S.E.2d at 360-61 (citing *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 347-48, 352 S.E.2d. 93, 98-99 (1986)).

also point to the fact that GHC pays GMI $200,000 per month in rent to use the sports facility complex as evidence that the two are district entities. [*Id.*]. In essence, GMI and GHC assert the record is devoid of any evidence that Southern and/or Kentucky Fuel "attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent party seeking to 'pierce the veil'" in their handling of the Greenbrier Project and the debt related thereto as required by West Virginia law. [*Id.* at 8 (quoting *Dailey*, 241 W.Va. at 414, 825 S.E.2d at 361)].

While GMI and GHC are correct that veil piercing is not only applicable in the context of subjecting a shareholder to liability for corporate acts but also "to make a corporation liable for behavior of another corporation within its total control," the Magistrate Judge did not err in finding GMI and GHC's reliance on *Dailey* and its veil piercing authority misplaced. Indeed, piercing the corporate veil, sometimes referred to as the "alter ego" or "instrumentality" doctrine, in the latter context applies in situations where an individual or entity is seeking to hold a parent corporation liable for the acts of its subsidiaries. *See Southern Elec. Supply Co. v. Raleigh County Nat. Bank*, 173 W.Va. 780, 786, 320 S.E.2d 515, 521, n. 9 (1984) (explaining "[i]t is usual that the alter ego theory seeks access to shareholders' assets for corporate liabilities, whereas 'instrumentality' is generally employed to hold one corporation liable for the acts of contractual obligations of another corporation that is within its total control."); *see also* 18 C.J.S. Corporations § 28 (2023) (explaining "[v]eil-piercing is proper when a subsidiary is an alter ego or instrumentality of the parent corporation."). Komatsu is not seeking to hold Kentucky Fuel, GMI, or GHC liable for the acts of Southern. Nor has there been any allegation in the context of this matter that Southern is a parent corporation of any of these related entities.

Rather, Komatsu is simply attempting to determine whether Southern, as a suggestee of Kirby, possesses the ability to satisfy the judgment Komatsu obtained against Kirby.

7

To do so, Komatsu is free to explore those related entities that may owe money directly or indirectly by way of another entity to Southern. This would include GMI and/or GHC, one of which purportedly owes Southern $16,000,000 either directly or indirectly by way of Kentucky Fuel for the Greenbrier Project. While the Court recognizes that the deposition testimony from Mr. Miller provides that the Greenbrier Project was always intended to be done for the benefit of GMI as opposed to GHC, the fact remains, as noted by the Magistrate Judge, that it was GHC which owned the property upon which improvements were being made during the vast majority of the project. As concluded by the Magistrate Judge, this fact, at the very least, creates an appearance of commingled assets amongst GMI and GHC. It is thus not beyond the pale to view GHC as a potential source of the $16,000,000 that is ultimately owed to Southern for the Greenbrier Project. This is true even if the $16,000,000 is ultimately owed by GHC to Kentucky Fuel, given that Kentucky Fuel would then owe the same to Southern.

At bottom, Komatsu need not "pierce the corporate veil" of Kentucky Fuel, GMI, or GHC in order to gain access to GHC's business records subpoenaed under Rule 45. While Rule 45(d) "sets forth additional grounds on which a subpoena against a third party may be quashed," none of which have been raised herein, "those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26." *Cook v. Howard*, 484 Fed. App'x. 805, 812 (4th Cir. 2012). Simply put, "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26," which requires a showing of relevancy and proportionality of the material sought. *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013); *see also Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) ("Rule 45 adopts the standard codified in Rule 26" in determining what is discoverable). Inasmuch as GHC's business records are relevant and proportional to the needs of

this case for the reasons expressed above, the same are discoverable by Komatsu. Accordingly, the Magistrate Judge's Order granting Komatsu's Motion to Compel against GHC is neither clearly erroneous, nor contrary to law.

## IV.

Based on the foregoing discussion, the Court **OVERRULES** GMI and GHC's Objections to Magistrate Judge's Order Granting Motion to Compel [**ECF 211**].

The Clerk is directed to send a copy of this written opinion and order to counsel or record and any unrepresented party.

ENTER: December 13, 2023

Frank W. Volk
United States District Judge