UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

KOMATSU FINANCIAL
LIMITED PARTNERSHIP,

      Plaintiff,

v.                                        CIVIL ACTION NO.  5:18-cv-01336

KIRBY LAND COMPANY, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending are Plaintiff Komatsu Financial Limited Partnership's ("Komatsu") (1) Renewed Motion for Order of Payment By Southern Coal Corporation ("Southern") to Komatsu Pursuant to Suggestion [ECF Nos. 182-2; 220], filed April 28, 2023, and (2) First Amended Motion for Further Proceedings Pursuant to W. Va. Code § 38-5-18 on James C. Justice Companies, Inc.'s ("JCJC") Answer to Suggestion ("First Amended Motion") [ECF 199], filed May 31, 2023.

I.

In January 2013, Komatsu entered an Agreement (the "Original Agreement") with Kentucky Fuel Corporation, Alabama Carbon, LLC, A&G Coal Corporation, Premium Coal Company, Inc., and Virginia Fuel Corporation (collectively the "Kentucky Fuel Entities"). The Original Agreement terminated certain equipment leases in favor of outright purchases. The Kentucky Fuel Entities were required to pay Komatsu $600,844.73 per month, secured by certain

equipment. Southern and JCJC (collectively the "Guarantors") guaranteed repayment of the Kentucky Fuel Entities' obligations. [ECF 220-1]. The Original Agreement provides "[n]o amendment to this Agreement, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto." [*Id.* at ¶ 15(g)]

In June 2013 and March 2014, Komatsu, the Kentucky Fuel Entities, and the Guarantors, executed two Temporary Payment Modification Agreements. The first reduced the Kentucky Fuel Entities' monthly payment to $400,000 from June 2013 to November 2013. [ECF 220-2]. The second allowed that reduced monthly payment to continue until May 2014. [ECF 220-3]. Both modifications provide "the subject matter hereof shall not be amended, supplemented, varied or otherwise change[d] except it writing." [ECF 220-2 at ¶ 11; ECF 220-3 at ¶ 10].

The Kentucky Fuel Entities defaulted. In January 2015, Komatsu, the Kentucky Fuel Entities, and the Guarantors, executed a Forbearance and Modification Agreement. [ECF 220-4]. Komatsu agreed to delay exercising it rights and remedies; the Kentucky Fuel Entities and the Guarantors agreed to pay Komatsu installments. A further default would allow Komatsu to exercise its remedies. The Forbearance and Modification Agreement provides "[n]o amendment, modification or waiver of any of the provisions of this Agreement shall be deemed to be made by the [*sic*] Komatsu unless evidenced by a writing signed by an officer of each of the [*sic*] Komatsu." [*Id.* at ¶ 23]. The Kentucky Fuel Entities defaulted again.

In April 2016, the parties entered a First Amendment to Forbearance and Modification Agreement. The Kentucky Fuel Entities gave equipment to Komatsu in exchange for debt reduction. [ECF 220-5]. The reduced debt was $13,062,737.41. The First Amendment to Forbearance and Modification Agreement also requires any amendment, modification, or waiver be in writing. [*Id.* at ¶ 18]. Additionally, that same day, Komatsu sold and assigned the

2

$13,062,737.41 debt and its rights under all the agreements ("Komatsu Agreements"), to Defendant Kirby Land Company, Inc. ("Kirby"). Kirby is an affiliate of the Kentucky Fuel Entities and the Guarantors. The purchase price was $8,150,000. The so-called Contract Purchase Agreement entered into by Komatsu and Kirby provides pertinently as follows:

> 2. <u>Purchase; Assignment; Assumption</u>. Subject to the terms and conditions set forth herein, at the execution hereof, Seller hereby, assigns, transfers, conveys and delivers to Buyer, and purchases and acquires from Seller, WITHOUT RECOURSE AND WITHOUT WARRANTY, all of Seller's right, title and interest in, to and under the Komatsu Agreements; PROVIDED HOWEVER SELLER RETAINS ALL RIGHTS AND INTERESTS AND OBLIGATIONS UNDER SECTIONS 2 AND 3 OF THE FIRST AMENDMENT TO FORBEARANCE AND MODIFICATION AGREEMENT[1] OF EVEN DATE HEREWITH.
>
> 3. <u>Purchase Price</u>. The purchase price for the Komatsu Agreements is Eight Million One Hundred Fifty Thousand and No/100 Dollars ($8,150,000.00), paid pursuant herewith by Buyer to Seller by Buyer's Term Note in the original principal amount of $8,150,000.00 and secured by Buyer's Deed of Trust on real property in Wyoming County, West Virginia of even date herewith.

[ECF 220-6 at 2]. So, Kirby took the same rights against Southern, JCJC, and the Kentucky Fuel Entities originally held by Komatsu. The sum of Kirby's promissory note to Komatsu was subsequently increased from $8,150,000 to $10,000,000.

Steven Ball is Southern's Executive Vice President.[2] He testified that after Komatsu sold the bulk of its rights -- excluding, as noted, the Section 2 and 3 rights retained for the transfer of secured and unsecured equipment -- "Kirby waived the terms of . . . [the Komatsu Agreements], booked the amount it obligated itself to pay on the [Kentucky Fuel Entities and the Guarantors'] behalf as an intercompany receivable, and treated that receivable in accordance with

---

[1] Sections 2 and 3 involve Komatsu's retained rights in the transfer of secured and unsecured equipment. They are immaterial presently. [*See* ECF 220-5 at 2-3].

[2] Mr. Ball is also Kirby's Vice President. [*See* ECF 123 at 19]. James C. Justice, III and Jillian Justice are lone directors for Kirby and Southern. [*Id.*; *see also* Ball Depo. at 8-9].

3

these related companies' normal practice and understanding regarding intercompany accounts." [ECF 222 at 4 (citing ECF 121-1, Ball Declaration at ¶¶ 9-15; ECF 224-1, Ball Depo. at 84-85, 91, 109-112, 136-137)]. Kirby thus booked the $10,000,000[3] debt as the intercompany receivable owed by Southern, with no mention of JCJC or the Kentucky Fuel Entities. [ECF 200 at 2; ECF 121, Ball Declaration at ¶ 9]. And Southern states "intercompany receivables have no maturity dates, are not payable on demand, and are repaid at such time, if any, that the owing entity becomes financially capable of paying." [ECF 222 at 4; *see also* ECF 121-1, Ball Declaration ¶¶ 13-14]. But Mr. Ball testified Southern cannot repay Kirby as required by the Komatsu Agreements. [ECF 121-1, Ball Declaration at ¶ 15; ECF 224-1, Ball Depo. at 132, 134].

Komatsu states Southern actually owes Kirby $13,062,737.41. Komatsu contends that was the last stipulated amount owed to Komatsu under the First Amendment to Forbearance and Modification Agreement. It insists "[t]he real amount of the debt exceeds $12 million, calculated by the actual debt, $13,062,737.41 plus interest, less the total amount Southern paid against the debt ($982,990.85)." [ECF 200 at 6]. Komatsu further asserts the unwritten, loose payment arrangement between Kirby and Southern is not allowed under the Komatsu Agreements.

Komatsu complains Kirby and Southern are related entities controlled by the same individuals. That is, of course, undoubtedly true -- and Komatsu knew that when it made its sale and assignment to Kirby. It specifically asserts "[i]n all probability it has never occurred to Mr. Ball or Mr. Justice to actively enforce an Intercompany Account on behalf of the creditor company because they also control the debtor." [*Id.* at 10]. Komatsu also bitterly complains that Southern only has to pay Kirby when able. It notes that while Mr. Ball confirmed this pay-when-able

---

[3] By July 2017, Southern paid down the debt to $9,017,009.15. [ECF 224-2]. That amount is reflected on Southern's balance sheet as a debt owed to Kirby. [ECF 224-4]. Kirby's balance sheet, however, pegs it at $8,377,865.73.

4

practice, he also testified as follows:

> Q. Who makes a decision when a debtor for an intercompany payable, when the debtor is able to pay?
>
> A. Typically that would be more – it would either be me or [James C. Justice, III ("Jay")]. But that would be more Jay than it would be me. And basically how that comes down is, more times than not – as I mentioned earlier, there is not just a huge surplus of cash in on of these entities where you can just say on day one, you know, let's clean all of those up. I mean, the reality of it is, is when a company has cash available, there is certainly a lot of times that other related parties need cash for some need, and it's sent to those parties as needed. So it's – in reality, that's how that decision plays out.

[ECF 224-1, Ball Depo. at 86-87].[4] Komatsu then accuses Mr. Ball and Mr. Justice of having unfettered discretion to burn cash "based on what company needs cash at the time the cash becomes available." [ECF 200 at 11]. Komatsu maintains "such an 'understanding' has no objective standards and is incapable of enforcement." [*Id.*]. These are, of course, rather thinly disguised allegations the corporate form is being unfairly exploited.

Continuing the patterns outlined earlier, Kirby defaulted. On October 2, 2018, Komatsu sued Kirby for payment. On September 16, 2019, the Court entered judgment against Kirby for $9,301,029.80, plus interest and fees. [ECF Nos. 40, 49]. The Clerk issued writs of execution on March 4 and September 17, 2020. [ECF Nos. 53, 99].

On September 16, 2020, Komatsu applied for a writ of suggestion against Southern [ECF 98]. Komatsu says that inasmuch as Southern is indebted to Kirby, the former is a proper suggestee. [ECF 100]. On December 13, 2021, Komatsu filed its first Motion for Order of Payment by Southern to Komatsu of $9,017,009.15 Pursuant to Suggestion [ECF 110]. Southern contended the debt to Kirby is "conditional," subject to its ability to pay and is thus not garnishable under

---

[4] The Court provisionally sealed Mr. Ball's deposition testimony. The excerpt bears on the disposition here. The fragment -- and it alone -- is thus unsealed.

West Virginia law. Southern also lacks the funds to pay Kirby, and hence Komatsu, on the suggestion.

On July 11, 2022, the Court denied Komatsu's Motion without prejudice. [ECF 137]. It further permitted discovery on the limited issues of whether Southern's debt to Kirby is contingent or fixed and whether Southern could pay. [*Id*.]. Discovery concluded on April 21, 2023. [ECF 178]. On April 28, 2023, Komatsu sought anew an Order of Payment by Southern. [ECF 220]. Komatsu asserts (1) the Kirby/Southern unwritten, unspoken intercompany account arrangement is invalid as an attempted, and prohibited, oral modification under the Komatsu Agreements; (2) Kirby has not validly waived the Komatsu Agreements; and (3) if the Kirby/Southern intercompany account arrangement is valid, the debt from Southern to Kirby is fixed and subject to garnishment under West Virginia law.

Southern agrees it owes a debt to Kirby. But it insists, as noted, the debt is conditioned on its ability to pay. It lacks that ability right now and asserts it is thus not subject to garnishment. Specifically, Southern states "West Virginia's statutory framework provides only for garnishment of amounts *when due*." [ECF 222 at 9 (emphasis in original)]. And, again, according to Southern, the debt owed to Kirby is not due under their intercompany account arrangement. Southern also sweeps aside Komatsu's several challenges to Kirby/Southern's lack of adherence to the Komatsu Agreements. Southern asserts it and Kirby are privileged to waive the Komatsu Agreements on any basis acceptable to both parties.

On April 11, 2022, Komatsu additionally applied for a writ of suggestion against JCJC. Komatsu asserts JCJC is also liable for Komatsu's judgment against Kirby, given JCJC's debt -- unbooked by Kirby -- arising from the Komatsu Agreements. [ECF 129]. JCJC denied indebtedness to Kirby. [ECF 136]. On February 3, 2023, Komatsu filed its first Motion for Further

Proceedings Pursuant to W. Va. Code § 38-5-18. [ECF 167]. On May 30, 2023, the Court denied the Motion without prejudice. It concluded Komatsu failed to allege sufficient facts to state a claim. [ECF 198]. In response, on May 31, 2023, Komatsu filed the First Amended Motion. [ECF 199].

Komatsu's First Amended Motion asserts after it assigned the $13,062,737.41 debt owed by JCJC, Southern, and the Kentucky Fuel Entities under the Komatsu Agreements to Kirby, JCJC, like Southern, owed Kirby $13,062,737.41. It does not explain in any great detail why Kirby was not privileged -- post-assignment -- to recharacterize the debt owed as it wished. Komatsu then asserts "[t]he evidence in this case demonstrates that while some payments were paid on the debt that JCJC owed to Kirby, the outstanding balance due on JCJC's debt to Kirby exceeds the amount of Komatsu's judgment against Kirby." [ECF 199 at 4]. Again, the statement ignores Kirby's recharacterization of the debt post-assignment. Komatsu then uses this cloak to assert "JCJC has not fully disclosed its debts or liabilities owed to Kirby" and requests further proceedings under *West Virginia Code* section 38-5-18, "which requires a jury, unless waived by both parties, to be impaneled to inquire as to the debts or liabilities." [*Id.* at 5]. Komatsu "further requests entry of a time frame for discovery into the issue of the indebtedness of [JCJC] to [Kirby] and for all other relief that the relief that the Court may deem appropriate." [*Id.*].

JCJC contends it is not indebted to Kirby as the latter waived the Komatsu Agreements "and kept in their place only an intercompany receivable in the amount that Kirby obligated itself to pay Komatsu (that is, the $10,000,00.00, which was later reduced by certain payments [made by Southern])." [ECF 200 at 2]. As one might expect, JCJC emphasizes "Kirby booked that intercompany receivable as an amount owed by Southern alone, not by JCJC or the Kentucky Fuel Entities," which was "Kirby's prerogative." [*Id.*]. JCJC thus contends Komatsu's Motion should be denied.

7

II.

*A.   Governing Standard*

Komatsu's Motion for Order of Payment By Southern is primarily governed by *West Virginia Code* section 38-5-10, which pertinently provides as follows:

> Upon a suggestion by the judgment creditor that a person is indebted or liable to the judgment debtor or has in the person's possession or control personal property belonging to the judgment debtor, which debt or liability could be enforced when due, . . . a summons against such person may be issued out of the office of the clerk of the circuit court or of the magistrate court of the county in which the judgment creditor obtained the writ of fieri facia, requiring such person to answer the suggestion in writing and under oath . . . .

W. Va. Code § 38-5-10(a). Section 38-5-15 further provides:

> If it appears from the answer of the person suggested that . . . the person was indebted or liable to the judgment debtor, . . . the court may order the person to pay the amount so due from the person and to deliver the property, or any part of the money or property, to such person as the court may designate as receiver . . . .

W. Va. Code § 38-5-15. Section 38-5-18 pertinently provides:

> When it is suggested by the judgment creditor in any case of suggestion that the person suggested has not fully disclosed the debts or liabilities due by the person to . . . the judgment debtor at the time of service of the summons, . . . the court shall cause a jury to be impaneled, without any formal pleadings, to inquire as to the debts or liabilities . . . , unless a trial by jury is waived by the parties.

W. Va. Code § 38-5-18.

*B.   Choice-of-Law*

The parties dispute the state law applicable to their controversy. Komatsu contends Kentucky law applies inasmuch as the Komatsu Agreements contain Kentucky choice-of-law provisions. [*See*, *e.g.*, ECF 220-1, Original Agreement at ¶ 15(a).

Southern responds it and Kirby "have no desire to enforce" the Komatsu

8

Agreements. [*Id.* at 12]. Kirby's counsel co-signed Southern's response brief asserting as much. [*Id.* at 12 n. 9, 23]. Inasmuch as "the Komatsu Agreements were made in Virginia (where the Original Debtors signed and accepted the terms of Komatsu's offers), and any performance as between the Original Debtors and Kirby would take place in Virginia or West Virginia," Southern asserts either Virginia or West Virginia law applies. [*Id.* at 13].

Federal courts sitting in diversity apply the choice-of-law principles of the state in which they sit. *See CSS, Inc. v. Herrington*, 306 F. Supp. 3d 857, 879 (S.D.W. Va. 2018) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). The Court will thus apply West Virginia's choice-of-law principles in determining what state law governs this dispute. Under West Virginia law, "a choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement[.]" *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 471, 796 S.E.2d 574, 580 (2017) (cleaned up) (internal quotations omitted) (quoting Syl. Pt. 1, *General Elec. Co. v. Keyser*, 166 W. Va. 465, 275 S.E.2d 289 (1981)).

As noted, the Komatsu Agreements contain choice-of-law provisions choosing Kentucky as controlling. But, as noted, Komatsu "assign[ed], transfer[ed], convey[ed], and deliver[ed] to" Kirby "all of [Komatsu's] right, title, and interest in, to and under the Komatsu Agreements . . . ." [ECF 220-6 at ¶ 2]. That is an event of legal consequence discussed further *infra*.

It is true that the payment obligation running from Southern to Kirby yet exists. Treating that "debt" as a contractual obligation of some stripe, generally, "[t]he law of the state in which a contract is . . . to be performed governs the construction of a contract when it is involved in litigation in the courts of [West Virginia]." *Howe v. Howe*, 218 W. Va. 638, 643, 625 S.E.2d

9

716, 721 (2005) (quoting Syl. Pt. 2, *Keyser*, 166 W. Va. at 456, 275 S.E.2d at 289)). This rule, commonly known as *lex loci delicti*, has long been referred to as "the cornerstone of [West Virginia's] conflict of laws doctrine." *Paul v. Nat'l Life*, 177 W. Va. 427, 433, 352 S.E.2d 550, 555 (1986).

The only remaining "performance" here appears to be payment by Southern to Kirby. Kirby is a West Virginia corporation with its principal place of business here. The subject contracts are akin to contracts for the repayment of money lent, which are governed by the following provision:

> The validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an effective choice-of-law by the parties, by the local law of the state where the contract requires that repayment be made, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 195 (Am. Law Inst. 1971). Section 6 recites the following factors to consider, specifically providing that:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice-of-law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> > (a) the needs of the interstate and international systems,
> > (b) the relevant policies of the forum,
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> > (d) the protection of justified expectations,
> > (e) the basic policies underlying the particular field of law,
> > (f) certainty, predictability and uniformity of result, and
> > (g) ease in the determination and application of the law to be applied.

*Id.* at § 6. So, all that remains is payment to Kirby by Southern in West Virginia. West Virginia law should govern. Moreover, West Virginia has the most significant relationship to the debt owed

inasmuch as Kirby is a West Virginia corporation. The Court will thus apply West Virginia law.

### III.

As earlier noted but summarized here, Komatsu asserts: (1) "Southern's debt to Kirby is still shown on the companies' balance sheets," demonstrating "Kirby has not waived its right to be paid by Southern," (2) "[t]he payment history reflects Southern paid the debt down by nearly $1 million," and (3) "[n]o words were exchanged between Kirby and Southern that would suggest that Kirby was waiving any of its rights." [ECF 200 at 19].

Komatsu's contentions tread near or directly upon a well-settled rule governing assignments, not to mention traditional notions of independent corporate governance. In 1878 -- the same year Thomas Edison was granted a patent for his cylinder phonograph -- the Supreme Court of Appeals observed the following, then-longstanding legal principle: "When a valid assignment is once made, the assignor has no further interest . . . ." Syl. Pt. 5, in part, *Clarke v. Hogeman*, 13 W. Va. 718, 718 (1878); *see also* 6A C.J.S. *Assignments* § 105 (2008) ("An assignment passes all the assignor's title and interest to the assignee and divests the assignor of all right of control over subject matter of the assignment. . . . Similarly, following an assignment of a contract the assignee stands in the shoes of the assignor and the assignor retains no rights to enforce the contract at all.").

Following the assignment of the Komatsu Agreements, their namesake ironically has no say respecting anything having to do with them, except as to the carveouts respecting Sections 2 and 3. Likewise, Komatsu has no present legal basis in this suggestion context to attack Kirby and Southern's corporate decision making or accounting choices. Frankly, Komatsu would have no basis to challenge the outright cancellation of the Komatsu Agreements if the assignee

11

and obligor(s) decide to do so, on terms satisfactory to both. And this summary spotlights why Komatsu's attempted use of suggestion procedure is an uphill trek that might well never level off, much less reach the summit.

An illustration demonstrates why suggestion procedure is ill-suited for the situation here presented, namely, where a right to payment from one closely related corporate entity to another is sought to be intercepted by a judgment creditor. As noted, Komatsu's Motion for Order of Payment By Southern is governed by *West Virginia Code* section 38-5-10. Komatsu's right thus hinges upon "a person," here Southern, being "indebted or liable to" Kirby, the judgment debtor. W. Va. Code § 38-5-10(a); *see also* W. Va. Code § 38-5-15 ("If it appears from the answer of the person suggested that . . . the person was indebted or liable to the judgment debtor . . . ."); W. Va. Code § 38-5-18 ("When it is suggested by the judgment creditor . . . that the person suggested has not fully disclosed the debts or liabilities due by the person . . . ."). But the closely related Kirby and Southern entities could quite easily collapse the suggestion "house of cards" at any time with Kirby either (1) canceling Southern's payment obligation, or, more likely, (2) making an accounting entry that, with the stroke of the pen, would reroute the Southern obligation to Komatsu's detriment. Either event would -- at least in the suggestion realm -- likely constitute incontestable evidence that Southern was no longer "indebted or liable to" Kirby.

For similar reasons, there is likewise little point to the parties' back-and-forth salvos respecting the contingent or fixed nature of the debt. If the debt is subject -- and likely -- to suffer immediate cancellation -- or an accounting recharacterization -- just short of attachment, suggestion procedure again seems *in apropos* at a minimum. And it holds the potential to result in much wasted yet expensive work by the Court, a jury, counsel, and the clients. Again, a brief illustration is in order.

12

For Komatsu to secure the relief it desires through the suggestion procedure, it is required to demonstrate the debt is certain and absolute. Komatsu points most prominently to the following testimony from Mr. Ball:

Q. What happens if the company that owes the money is never financially capable of repaying it?

A. It just stays on the books of each company as an intercompany account.

[ECF 224-1, Ball Depo. at 136-37]. Komatsu maintains this means "the liability for an intercompany debt continues to exist between the companies until payment," and the "debt is not erased simply because a company is unable to pay." [ECF 200 at 13].

Southern counters that if "the intercompany receivable that [it] owes Kirby may never become due and payable, it is a contingent liability and is not subject to suggestion." [ECF 222 at 7]. Southern further highlights that it "does not currently have, and very well may never have, the ability to pay the intercompany balance at issue to Kirby." [*Id.*]. This insoluble, pillar-to-post exchange once again demonstrates the suggestion approach is ill-suited for the remedy sought.

The purpose of suggestion procedure "is to divert to the judgment creditor a payment due the judgment debtor *by a third person*." *Douglas*, 239 W. Va. at 826, 806 S.E.2d at 482 (emphasis added). When doubt arises, however, as it does here, whether Kirby, Southern, and the rest of the mentioned corporate entities are separate at all or, instead, a single instrumentality, the necessary "third person" is but a vapor. But that does not mean Komatsu is without a remedy. Ironically, those very same, almost sleight-of-hand actions devised by Kirby and Southern to easily frustrate Komatsu's suggestion attempts -- and work a great waste of resources in the process -- might also go a long way toward creating a compelling evidentiary basis for a successful instrumentality claim, and thereby ultimate payment of the obligation Komatsu seeks to recover.

13

*S. Elec. Supply Co. v. Raleigh Cnty. Nat. Bank.*, 173 W. Va. 780, 790, 320 S.E.2d 515, 525 (1984) ("[I]f a Raleigh County National Bank officer believed it was entitled to Southern Electrical's deposit, it should have sued Gibson Electric, Gibson and Southern Electrical, and presented its alter ego theory. Whether a corporate structure should be disregarded is peculiarly a question for courts to determine from evidence."); *see also id.* 173 W. Va. at 786 n.9, 320 S.E.2d at 521 n.9 ("It is usual that the alter ego theory seeks access to shareholders' assets for corporate liabilities, whereas 'instrumentality' is generally employed to hold one corporation liable for the acts or contractual obligations of another corporation that is within its total control. *See generally* 1 Fletcher, *Cyclopedia of Corporations* (Perm.Ed.1983 Rev.) §§ 41.10, 43, 43.10; Annot., *Liability of Corporation for Contracts of Subsidiary*, 38 A.L.R.3d 1102 (1971 and Supp.).").

Based upon the foregoing, and before adjudicating the parties' significant but nevertheless "moving target" legal questions, the Court first desires Komatsu, on or before February 10, 2024, to state whether it desires to continue with its suggestion process knowing that it may well expend considerable fees and costs in doing so with the risk of the matter becoming moot at any time by a unilateral Kirby/Southern action described heretofore. Second, in the event Komatsu desires to proceed by suggestion -- and not instead institute a separate action to develop and prosecute an instrumentality or alter ego claim -- the Court directs Kirby and Southern, no later than February 20, 2024, to affirmatively disavow any intention to cancel or recharacterize the debt owed by the latter, subject to a later course reversal being challenged on judicial estoppel grounds.

Accordingly, the Court (1) **DENIES WITHOUT PREJUDICE** Komatsu's Renewed Motion for Order of Payment By Southern to Komatsu Pursuant to Suggestion [**ECF Nos. 182-2; 220**], with it subject to renewal pursuant to the further order of the Court, (2) **DENIES**

Komatsu's Motion for Leave to File Supplemental Briefing [**ECF 231**] on the issue of Southern's ability to pay its debt to Kirby, and awaiting Kirby's forthcoming filing, and (3) **DENIES WITHOUT PREJUDICE** Komatsu's First Amended Motion for Further Proceedings Pursuant to W. Va. Code § 38-5-18 on JCJC's Answer to Suggestion. [**ECF 199**].

        The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: January 30, 2024



Frank W. Volk
United States District Judge